JOHN L. BURRIS, SBN 69888
ADANTE' D. POINTER, SBN 236229
7677 Oakport Street, Suite 1120
Oakland, CA 94621
(510) 839-5200; FAX (510) 839-3882

Attorneys for plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN FRANCIS McCLOSKEY, LAILA McCLOSKEY and D.M.<br><br>       Plaintiffs,<br><br>vs.<br><br>SPIKE HELMICK, M.E. COURTNIER and J. WHITE, individually and DOES 1-100, inclusive,<br><br>       Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES<br>CIVIL RIGHTS ACTION<br>DEMAND FOR JURY TRIAL** |

## I.   INTRODUCTION

This case is about the unlawful use of force by California Highway Patrol (CHP) Officers on an unarmed married couple and their then, four month old son. Specifically, CHP Officer M.E. COURTNIER pulled the family over as they were traveling along Highway 12 en-route to a friend's house located less than a quarter-mile from where Officer COURTNIER stopped the family. During the course of the traffic stop, Officer COURTNIER demanded that Mr. McCLOSKEY produce his driver's license. Mr. McCLOSKEY was not driving and was seated in the passenger seat.

Mr. McCLOSKEY objected to the officer's demand and without warning or justification, Officer COURTNIER became enraged and violently grabbed Mr. McCLOSKEY's right wrist and sprayed pepper spray inside the partially enclosed passenger compartment of the McCLOSKEY's Honda

Accord. Then, Officer COURTNIER inexplicably opened the passenger door and began beating Mr. McCLOSKEY with his baton in plain-view of Mr. McCLOSKEY's family. Shortly thereafter, CHP Officer J. WHITE arrived on the scene and both officers forcibly removed the partially blind and choking Mr. McCLOSKEY from the car. The officers then placed Mr. McCLOSKEY, whose shirt had been partially ripped off his back during the assault, face down on the hot blacktop for several minutes causing him unnecessary pain and suffering. Officer COURTNIER issued Ms. McCLOSKEY a citation and took him into custody. Mr. McCLOSKEY was subsequently charged with committing five misdemeanors including resisting arrest, assault on a peace officer and three other related misdemeanor violations. However, those charges were ultimately dismissed.

## II.   JURISDICTION

This action arises under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 and § 1343. The court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Plaintiff has filed an administrative claim with the State of California in compliance with California Government Code sections 910 et seq., the State rejected the claim.

## II.  THE PARTIES

### A.  Plaintiff

1.  Plaintiff SEAN McCLOSKEY ("Mr. McCLOSKEY") is a 54 year-old licensed Attorney, husband of Plaintiff LAILA McCLOSKEY and biological father of D.M. Mr. McCLOSKEY was at all times herein mentioned, a citizen of the United States and a resident of Napa County, California.

2.  Plaintiff LAILA McCLOSKEY ("Mrs. McCLOSKEY") is a student/homemaker and biological mother of D.M. Mrs. McCLOSKEY was at all times herein mentioned, a citizen of the United States and a resident of Napa County, California.

3. Plaintiff D.M. ("D.M.") was at all times herein referenced a 3 month-old infant and the biological son of Plaintiffs Mr. and Mrs. McCLOSKEY. D.M. was at all times herein mentioned, a citizen of the United States and a resident of Napa County, California.

### B. Defendants

4. Defendants California Highway Patrol Officers M.E. COURTNIER and J. WHITE are, and at all times mentioned were employees of CHP who participated in the police conduct complained of herein.

5. Defendant SPIKE HELMICK (COMMISSIONER HELMICK) is, and at all times herein mentioned was, the Commissioner for CHP. Defendant HELMICK was the policy-maker for CHP on the matters alleged herein related to the customs, policies and practices, of CHP, including, but not limited to, customs, policies and practices related to making traffic stops, detentions and/or arrests; the training, supervision, hiring, discipline, assignment and control of police officers; and the management and supervision of CHP.

6. All of the CHP defendants are sued in their individual capacities.

7. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and therefore allege that each of the Doe defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Plaintiffs are informed and believe and therefore allege that each of these defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, violation of constitutional and legal rights. In the alternative, Plaintiffs are informed and believe and therefore allege that these defendants are liable by reason of personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

8. Each of the defendants, including defendants DOES 1 through 100, caused, and is responsible for, the below-described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing, with deliberate indifference to plaintiffs' rights, to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and Officers under their direction and control, including failing to take remedial or disciplinary action.

9. In doing the acts alleged herein, defendants, and each of them, acted within the course and scope of their employment for the STATE OF CALIFORNIA and/or the CALIFORNIA HIGHWAY PATROL.

10. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted under color of authority and/or under color of law.

11. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other defendants.

12. For State causes of action related to federal claims, Plaintiffs are required to comply with an administrative claim requirement under California law. Plaintiffs have complied with all applicable requirements.

### III. STATEMENT OF FACTS

12. On or about August 8, 2004, California Highway Patrol Officers M.E. COURTNIER and J. White severely injured Mr. and Mrs. McCLOSKEY and their then three month-old infant son, D.M., without justification or cause.

13. Officer COURTNIER stopped the McCLOSKEYs as they were traveling north on Highway 12, in the city of Sonoma. Mrs. McCLOSKEY was driving and Mr. McCLOSKEY was seated in the passenger seat holding their infant son who, minutes before Officer COURTNIER stopped the vehicle, had abruptly awoke from his sleep crying and choking.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**                                4                                **CASE NO.**

14. Mrs. McCLOSKEY immediately pulled over onto the shoulder of the highway as soon as she noticed Officer COURTNIER's CHP cruiser behind them with its lights and sirens on. Officer COURTNIER approached the vehicle on the passenger side as Mr. McCLOSKEY rolled down his window. Officer COURTNIER informed them that he pulled them over because he noticed that D.M. was in Mr. McCLOSKEY's hands and not in a car seat. Almost immediately, Mr. and Mrs. McCLOSKEY began to explain that they had just taken the baby out of his car seat due to D.M. choking and that they were looking for a safe place to pull over when they passed the Officer.

15. Officer COURTNIER asked for Mrs. McCLOSKEY's driver's license and vehicle registration. He also asked Mrs. McCLOSKEY whether she had been drinking any alcohol. Mrs. McCLOSKEY responded that she does not drink alcohol and had not had any alcoholic drinks that day. Officer COURTNIER then asked Mr. McCLOSKEY for his driver's license. Mr. McCLOSKEY questioned the Officer as to why he needed to see his license since he was not driving the vehicle.

16. Officer COURTNIER became irate and again demanded that Mr. McCLOSKEY hand over his driver's license. Mr. McCLOSKEY put D.M. back in his car seat and turned around to face Officer COURTNIER. Officer COURTNIER then demanded that Mr. McCLOSKEY get out of the car while he simultaneously reached into the car, grabbed and violently yanked Mr. McCLOSKEY's right arm. Instinctively, Mr. McCLOSKEY pulled back and Officer COURTNIER pulled out his pepper-spray and placed it inside the passenger window. Without warning or justification, Officer COURTNIER yelled "get out of the car" and began spraying the pepper-spray toward Mr. McCLOSKEY's face, a mere foot or two from Mrs. McCLOSKEY and D.M..

17. The pepper-spray immobilized Mr. McCLOSKEY, causing him to choke and lose his sight. Officer McCLOSKEY then opened the car door and began violently yanking on Mr. McCLOSKEY's shirt in an attempt to get him out of the car. As Mr. McCLOSKEY began exiting the car, Officer

COURTNIER began striking him on the legs with his baton. Officer COURTNIER struck him several times causing Mr. McCLOSKEY to writhe from the excruciating pain.

18. During the assault, Mrs. McCLOSKEY sat in the driver's seat crying and intermittently pleading with Officer COURTNIER to stop his merciless beating of her husband. She also tried to sooth D.M. who had also begun crying, screaming and choking due to his inhalation of the pepper-spray.

19. About the time Officer COURTNIER was unnecessarily yanking Mr. McCLOSKEY out of the passenger seat, Officer J. WHITE arrived. Officer WHITE joined forces with Officer COURTNIER and grabbed Mr. McCLOSKEY with such force that they tore his shirt off his back. Both Officers then slammed the shirtless Mr. McCLOSKEY onto the extremely hot asphalt.

20. At this point, Mrs. McCLOSKEY got out of the car and ran around to the passenger side of the car. Mr. McCLOSKEY's wallet was laying on the ground, she picked it up and attempted to give the Officers his driver's license. Officer COURTNIER turned around and pushed Mrs. McCLOSKEY in her chest, telling her to "get back, I've had enough of you."

21. The two Officers, then handcuffed Mr. McCLOSKEY and kept him face-down on the hot asphalt. The Officers ignored Mr. McCloskey's pleas to sit up and continued holding him against the asphalt for several minutes while the hot asphalt seared his exposed chest.

22. Officer COURTNIER then issued Mrs. McCLOSKEY a citation for driving with an unrestrained child and placed Mr. McCLOSKEY under arrest. Mr. McCLOSKEY was then taken to Sonoma Valley Hospital for further medical treatment and later booked into Sonoma County Jail on charges of violating Penal Codes 148(a) resisting/interfering with a peace officer, 647(f) public intoxication, 243 (c) battery on a peace officer and 241(b) assault on a peace officer and violating Vehicle Code Section 2800 failure to obey a lawful order.

23. The noxious and toxic chemicals contained in Officer COURTNIER's pepper spray irritated Mrs. McCLOSKEY's eyes, throat and nose for several days. D.M. also suffered from his exposure to the pepper-spray as he intermittently cried and rubbed his eyes for the remainder of the night. In addition, he developed a red rash on his face which lasted for several days after the unprovoked attack.

24. The McCLOSKEYs suffered severe emotional distress as a result of this incident. Mr. and Mrs. McCLOSKEY occasionally have nightmares about the assault and no longer feel the same sense of security and comfort around police officers they once enjoyed.

25. The charges against Mr. McCLOSKEY related to this event were eventually dismissed.

## IV.  REQUISITES FOR RELIEF

26. Plaintiffs are informed and believe that the violations of their constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of the defendant CALIFORNIA HIGHWAY PATROL including defendants COMMISSIONER HELMICK and other supervisory officials of the CHP which encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein. Said customs, policies and practices include, but are not limited to the use of excessive and/or arbitrary force to intimidate and control persons during the course of routine traffic stops; the failure to maintain adequate policies, and to adequately train, supervise and control CHP Officers, concerning the treatment of persons detained during routine traffic stops and the constitutional limitations on the use of force; and the failure to investigate and impose discipline on CHP Officers involved in the unconstitutional and unlawful actions complained of herein, and/or to adopt other remedial measures and policies to insure that such violations of legal rights would not recur.

27. As a direct and proximate result of the conduct of defendants described herein, the Plaintiffs have been denied their constitutional, statutory and legal rights as stated below, and have suffered, continues to suffer and will in the future suffer general and special damages, including but not limited to, mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**              7              **CASE NO.**

embarrassment, discomfort, and anxiety, medical and related expenses, and lost earnings in an amount according to proof.

28. Defendants' acts were willful, wanton, malicious and oppressive and done with conscious disregard and deliberate indifference to plaintiff's rights.

29. Defendants' policies, practices, customs, conduct and acts alleged herein have resulted and will continue to result in irreparable injury to plaintiffs, including but not limited to violating their constitutional and statutory rights. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein. Defendants' conduct described herein placed Plaintiffs in fear, anxiety and uncertainty with respect to their exercise now and in the future of these constitutional rights, and with respect to their physical security and safety. Plaintiffs therefore seek injunctive relief from this court, to ensure that plaintiffs and persons similarly situated will not suffer violations of their rights from defendants' illegal and unconstitutional policies, customs and practices as described herein.

30. An actual controversy exists between the plaintiffs and defendants in that the plaintiffs contend the policies, practices and conduct of defendants alleged herein are unlawful and unconstitutional, whereas plaintiffs are informed and believe that defendants contend said policies, practices and conduct are lawful and constitutional. Plaintiffs are seeking a declaration of rights with respect to this controversy.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation Of Fourth And Fourteenth Amendments To United States Constitution**

**(42 U.S.C. § 1983)**

31. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 30 of this complaint.

32. Defendants' above-described conduct violated plaintiffs' right to be free from unreasonable seizures and excessive and/or arbitrary force without reasonable or probable cause under the Fourth and Fourteenth Amendments to the United States Constitution.

### SECOND CLAIM FOR RELIEF

**Violation Of Fourteenth Amendment To United States Constitution**

**(42 U.S.C. § 1983)**

33.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 32 of this complaint.

34.  Defendants' above-described conduct violated plaintiffs' right to not be deprived of liberty without due process of law under the Fourteenth Amendment to the United States Constitution.

### THIRD CLAIM FOR RELIEF

### Violation Of Fourteenth Amendment To United States Constitution

**(42 U.S.C. § 1983)**

35.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 34 of this complaint.

36.  Defendants' above-described conduct violated plaintiffs' rights to equal protection of the laws guaranteed under the Fourteenth Amendment to the United States Constitution.

### FOURTH CLAIM FOR RELIEF

### Violation of California Constitution, Article I, § 13

37.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 36 of this complaint.

38.  Defendants' above-described conduct violated plaintiffs' right to be free from unreasonable seizures and excessive and/or arbitrary force without reasonable or probable cause as guaranteed under article I, section 13 of the California Constitution.

### FIFTH CLAIM FOR RELIEF

### Violation of California Constitution, Article 1, § 7(A)

39.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 38 of this complaint.

40.  Defendants' above-described conduct violated plaintiffs' right not to be deprived of life, liberty or property without due process of law as guaranteed under article 1, section 7(a) of the California Constitution.

### SIXTH CLAIM FOR RELIEF

### Violation of California Constitution, Article 1, § 7(A)

41. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 40 of this complaint.

42. Defendants' above-described conduct violated plaintiffs' right to equal protection of the laws under article 1, section 7(a) of the California Constitution.

## SEVENTH CLAIM FOR RELIEF
### Violation of California Civil Code § 52.1

43. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 42 of this complaint.

44. Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code section 52.1.

## EIGHTH CLAIM FOR RELIEF
### Assault And Battery

45. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44 of this complaint.

46. Defendants' above-described conduct constituted assault and battery.

## NINTH CLAIM FOR RELIEF
### Intentional Infliction Of Emotional Distress

47. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 46 of this complaint.

48. Defendants' above-described conduct was extreme, unreasonable and outrageous.

49. In engaging in the above-described conduct, defendants intentionally ignored or recklessly disregarded the foreseeable risk that Plaintiffs would suffer extreme emotional distress as a result of defendants' conduct.

## TENTH CLAIM FOR RELIEF
### Negligence

50. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this complaint.

51. Defendants have a duty of care to Plaintiffs to ensure that defendants did not cause unnecessary or unjustified harm to Plaintiffs and a duty of care to hire, train, supervise and discipline CHP officers so as to not cause harm to plaintiffs and to prevent violations of plaintiffs' constitutional, statutory and common law rights.

52. The above-described acts and omissions of defendants breached the duty of care defendants owed to the plaintiffs.

## ELEVENTH CLAIM FOR RELIEF

**Negligent Hiring, Retention, Training, Supervision, and Discipline**

53. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 52 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants.

54. At all times herein mentioned, defendant CHP, by and through its supervisory employees and agents, COMMISSIONER HELMICK, and DOES 1-100, inclusive, has and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its police officers so as to avoid unreasonable risk of harm to citizens.  With deliberate indifference, CHP, COMMISSIONER HELMICK, and DOES 1-10, inclusive, failed to take necessary, proper, or adequate measures in order to prevent the violation of plaintiff's rights and injury to said plaintiff.  CHP, COMMISSIONER HELMICK, and DOES 1-100, inclusive, breached their duty of care to citizens in that CHP, COMMISSIONER HELMICK and DOES 1-100, inclusive, failed to adequately train its police officers, including Officers M.E COURTNIER and J. WHITE in the proper and reasonable use of force, and/or failed to have adequate policies and procedures regarding the proper and reasonable use of force.  This lack of adequate supervisorial training, and/or policies and procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the continuing use of excessive and unreasonable force and/or failure to make proper and reasonable detentions and/or arrests by police

Officers employed by CHP.

55. As a proximate result of defendants and DOES 1-100, negligent conduct, plaintiffs suffered severe physical and emotional injuries and severe mental distress,

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## XI. PRAYER

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

1. For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

2. For a declaratory judgment that defendants' conduct complained of herein was a violation of plaintiff's rights under the Constitution and laws of the United States and California;

3. For general and compensatory damages to be determined according to proof;

4. For special damages, including but not limited to medical and related expenses;

5. For punitive and exemplary damages in amounts to be determined according to proof as to the individual defendants;

6  For attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code section 52.1(h), and California Code of Civil Procedure section 1021.5;

8. For costs of suit;

9. For pre- and post-judgment interest as permitted by law;

10. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial.

DATED: November 14, 2005

By _____

John L. Burris
Attorney for Plaintiff

**COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**  12  **CASE NO.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**        13        **CASE NO.**