IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN FRANCIS McCLOSKEY, LAILA McCLOSKEY and D.M., <br><br> Plaintiffs, <br><br> v. <br><br> M.E. COURTNIER and J. WHITE, individually and DOES 1-100, inclusive, <br><br> Defendants. | No. C 05-4641 MMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; VACATING HEARING** |

Before the Court is defendants M.E. Courtnier's and J. White's motion for summary judgment, filed January 23, 2012. Plaintiffs Sean McCloskey, Laila McCloskey, and D.M., a minor, have filed opposition, to which defendants have replied. The Court, having read and considered the papers filed in support of and in opposition to the motion, deems the matter suitable for decision on the parties' respective written submissions, VACATES the hearing scheduled for March 2, 2012, and rules as follows.

**BACKGROUND**

Plaintiffs' claims arise out of a traffic stop, effectuated by M.E. Courtnier ("Officer Courtnier"), that occurred on August 8, 2004, in which Laila McCloskey was the driver, and Sean McCloskey and the McCloskey's infant son, D.M., were passengers. (See Amended Declaration of Adante Pointer in Support of Plaintiff's Opposition to Defendants' Motion for

1 Summary Judgment ("Pointer Decl.") Ex. A at 28:14-30:20.) Plaintiffs allege Officer
2 Courtnier, an officer with the California Highway Patrol ("CHP"), used excessive force in
3 removing plaintiff Sean McCLoskey from the vehicle, and, in the process, caused injury to
4 Laila and D.M., after which J. White ("Officer White"), also an officer with the CHP, arrived
5 and, along with Officer Courtnier, used further excessive force in the course of arresting
6 Sean McCloskey. (See id. at 46:15-47:3, 48:2-13, 49:8-50:12.)

7 Based on said allegations, plaintiffs assert claims for unreasonable seizure and
8 excessive force in violation of their rights under the Fourth and Fourteenth Amendments to
9 the United States Constitution (First Claim for Relief), deprivation of liberty without due
10 process of law in violation of their rights under the Fourteenth Amendment (Second Claim
11 for Relief), violation of their rights to equal protection of the law under the Fourteenth
12 Amendment (Third Claim for Relief),[1] analogous claims under the California Constitution
13 and statutes (Fourth through Seventh Claims for Relief), as well as common law claims for
14 assault and battery, intentional infliction of emotional distress, and negligence (Eighth
15 through Tenth Claims for Relief). (See Compl. ¶¶ 31-55.)

16 Defendants move for summary judgment on the asserted grounds that they did not
17 violate the constitutional rights of plaintiffs, they are entitled to qualified immunity, and,
18 because defendants acted reasonably, plaintiffs' state law claims likewise fail. (See Mot. at
19 1:8-15.)

**LEGAL STANDARD**

21 Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant
22 summary judgment "if the movant shows that there is no genuine dispute as to any material
23 fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).
24 The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986),
25 Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co.
26 v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that, once the moving party has

---

28 [1] Neither party discusses the Third Claim for Relief in their respective submissions filed in connection with the instant motion. Accordingly, said claim is not addressed herein.

shown the absence of a genuine issue of material fact, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

**DISCUSSION**

**I.   Sean McCloskey's Claims**

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment[2] requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation omitted).

Here, defendants contend the evidence is undisputed that when Officer Courtnier requested Sean McCloskey's identification and ordered him to exit the vehicle, Sean McCloskey refused to comply, made a threatening gesture and a "growling" sound and attempted to pull Officer Courtnier through the window, at which point Officer Courtnier used pepper spray in an effort to subdue him, and that when Sean McCloskey then reached toward the floor of the vehicle, as if for a weapon, Officer Courtnier struck Sean

---

[2] As defendants point out, Sean McCloskey's excessive force claim is properly brought under the Fourth Amendment and not under the Fourteenth. See United States v. Lanier, 520 U.S. 259, 272 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.")

3

1  McCloskey several times on the lower shin with his baton, and, with the help of Officer
2  White, removed him from the vehicle and guided him to the ground.  (See Devine Decl. Ex.
3  A at 51:10-52:6, 53:15-54:21, 56:24-59:3, 59:16-18, 60:13-61:14, 65:11-25, 66:18-22,
4  74:12-75:2, 81:9-82:1)

5  Contrary to defendants' argument, however, genuine issues of material fact exist as
6  to the reasonableness of the force defendants employed.  In particular, plaintiffs, while
7  conceding Sean McCloskey questioned the need for his identification and for him to exit the
8  vehicle, have submitted evidence that, without notice, Officer Courtnier grabbed Sean
9  McCloskey by the neck and arm and attempted to pull him out of the vehicle through the
10 window and then sprayed him with pepper spray, after which, as he was endeavoring to
11 exit the vehicle voluntarily, Officer Courtnier began beating him about the shins with his
12 baton, and thereafter both officers pushed him to the ground and forced him to keep his
13 exposed chest against the painfully hot blacktop.  (See Pointer Decl. Ex. A at 46:15-47:3,
14 48:2-20, 49:21-50:12, 127:9-21; Ex. B at 37:18-25, 71:14-17, 76:25-77:3.)

15 Although peace officers are entitled to employ reasonable force to remove an
16 uncooperative detainee from a vehicle,  see, e.g., Graham, 490 U.S. at 396 (noting "[o]ur
17 Fourth Amendment jurisprudence has long recognized that the right to make an arrest or
18 investigatory stop necessarily carried with it the right to use some degree of physical
19 coercion or threat thereof to effect it"), at each stage of force employed here, the relevant
20 evidence as to the conduct of the primary participants is in dispute.  Viewing the facts in the
21 light most favorable to plaintiffs, a reasonable jury could conclude defendants employed
22 excessive force.

23 Consequently, as to Sean McCloskey, defendants are not entitled to summary
24 adjudication as to the issue of whether they used excessive force.  See Santos v. Gates,
25 287 F.3d 846, 853 (9th Cir. 2002) ("Because [the Graham] balancing nearly always
26 requires a jury to sift through disputed factual contentions, and to draw inferences
27 therefrom, we have held on many occasions that summary judgment or judgment as a
28 matter of law in excessive force cases should be granted sparingly.")  The Court next turns

1 to the issue of qualified immunity.

2 In determining whether an officer is entitled to qualified immunity, a court must 3 decide "(1) whether, taken in the light most favorable to the party asserting the injury, the 4 facts alleged show the official conduct violated a constitutional right; and (2) if so, whether 5 the right was clearly established in light of the specific context of the case." See Robinson 6 v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 7 (2001)).

8 Recently, in Brooks v. City of Seattle, 661 F.3d 433, 445 (9th Cir. 2011), petition for 9 cert. filed (U.S. Feb. 21, 2012) (No. 11-1045), the Ninth Circuit considered a Fourth 10 Amendment claim based on an officer's use of a taser, in drive-stun mode, to remove an 11 uncooperative pregnant driver and effectuate an arrest for a traffic violation. The Ninth 12 Circuit held such use, where the lack of cooperation consisted solely of the driver's 13 clutching the steering wheel and refusing to move, constituted excessive force, but that the 14 officer was entitled to qualified immunity because, at the time of the stop, "the law was not 15 sufficiently clear . . . to render the alleged violation clearly established." See id. at 448. 16 Here, as noted above, Officer Courtnier used pepper spray in the course of removing Sean 17 McCloskey after his refusal to exit voluntarily. Citing Brooks, defendants argue Officer 18 Courtnier's use of pepper spray, was analogous to the force there under consideration, and 19 thus was not in violation of clearly established law.

20 As further noted above, however, the circumstances pertaining at the time the 21 pepper spray was employed by Officer Courtnier are in dispute. (Compare Pointer Decl. 22 Ex. A at 46:15-47:3, 48:2-13 with Devine Decl. Ex. A at 53:15-54:21, 66:15-67:3, 77:10- 23 78:9); see Smith v. City of Hemet, 394 F.3d 689, 704 n.7 (9th Cir. 2005) (holding use of 24 pepper spray can constitute excessive force; also noting "no particularized case law is 25 necessary for a deputy to know that excessive force has been used" when deputy uses, 26 inter alia, pepper spray on handcuffed arrestee who has fully surrendered). Further, the 27 extraction here involved the use of additional forms of physical force. (See Pointer Decl. 28 Ex. A at 46:15-47:3, 48:2-13; Devine Decl. Ex. A at 53:15-54:21, 77:10-78:9)

5

Consequently, because the facts relevant to the issue of qualified immunity are inextricably intertwined with the disputed facts relevant to the issue of excessive force, defendants are not entitled to summary adjudication on the issue of qualified immunity. See Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.")

Lastly, the resolution of each of Sean McCloskey's state law claims is dependent on the resolution of the same disputed facts as discussed above, and, consequently, defendants are not entitled to summary adjudication of Sean McCloskey's state law claims. See, e.g., Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998) (describing 42 U.S.C. § 1983 as "federal counterpart of state battery . . . action[ ]"); David v. City of Fremont, No. 05-46 CW, 2006 WL 2168329 at *21 (N.D. Cal. July 31, 2006) (noting California courts apply same standard when evaluating Fourth Amendment claims of excessive force and state law negligence claims).

## II. Laila and D.M.'s Claims

Laila McCloskey and D.M., the unintended objects of Officer Courtnier's use of pepper spray, assert as to both defendants each of the above-referenced federal and state claims. (See Compl. ¶¶ 31-55.)

Where a bystander who is not the object of police action is injured by the application of force by a police officer against a third party, the bystander has not been "seized" under the Fourth Amendment. See Brower v. County of Inyo, 489 U.S. 593, 596 (1989) ("A Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby) . . . but only when there is a government termination of freedom of movement through means intentionally applied.") (emphasis in original); Nelson v. City of Davis, 709 F. Supp. 2d 978, 987 (E.D. Cal. 2010) (holding individual struck by police pepper spray ball was "seized" under Fourth Amendment only if he was "within the group of individuals . . . targeted by the police officers" and thus "an intended object" of such force). Consequently, to the extent

1 Laila McCloskey and D.M. bring their claims under the Fourth Amendment, such cause of
2 action is subject to summary adjudication in favor of defendants.  The Court next turns to
3 Laila McCloskey and D.M.'s claim under the Fourteenth Amendment.

4 "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process
5 violation" under the Fourteenth Amendment.  See Porter v. Osborn, 546 F.3d 1131, 1137
6 (9th Cir. 2008).  The Ninth Circuit recognizes two "standards" for determining whether
7 conduct shocks the conscience: (1) "deliberate indifference" and (2) "purpose to harm." See
8 id.  Where "circumstances allow[ ] the state actors time to fully consider the potential
9 consequences of their conduct," the "deliberate indifference" standard applies; otherwise,
10 the "purpose to harm" standard applies.  See Moreland v. Las Vegas, 159 F.3d 365, 373
11 (9th Cir. 1998).  Here, the facts relevant to a determination of whether Officer Courtnier had
12 time to fully consider his use of pepper spray and/or whether he acted with "deliberate
13 indifference" are the same facts as are relevant to the claims brought by Sean McCloskey
14 and, as noted above, are in dispute.  Consequently, Officer Courtnier is not entitled to
15 summary adjudication of Laila McCloskey and D.M.'s due process claims under the
16 Fourteenth Amendment.

17 To the extent Laila McCloskey and D.M's state claims are based on the use of
18 pepper spray, such claims likewise are dependent on the above-referenced disputed facts.
19 To the extent such claims are based on Officer Courtnier's use of force in the form of his
20 pushing Laila McCloskey after she exited the vehicle, the relevant facts are in dispute as
21 well.  (Compare Pointer Decl. Ex. B at 41:1-16, 81:11-16 with Device Decl. Ex. A at 82:11-
22 20.)  Consequently, Officer Courtnier is not entitled to summary adjudication of Laila
23 McCloskey and D.M.'s state law claims.

24 To the extent Laila McCloskey and D.M. bring their federal and state law claims
25 against Officer White, however, such claims are subject to summary adjudication in favor of
26 said defendant, as the evidence is undisputed that Officer White arrived at the scene after
27 the pepper spray had been used and that he took no action with respect to either such
28 plaintiff.  (See Devine Decl. Ex. D at 84:1-16.)

Case3:05-cv-04641-MMC Document90 Filed02/28/12 Page8 of 8

**CONCLUSION**

For the reasons stated above, defendants' Motion for Summary Judgment is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent Sean McCloskey brings a due process claim under the Fourteenth Amendment, the motion is GRANTED.

2. To the extent Laila McCloskey and D.M. bring a claim under the Fourth Amendment, the motion is GRANTED.

3. To the extent Laila and D.M. bring their claims against defendant Officer White, the motion is GRANTED.

4. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: February 28, 2012

MAXINE M. CHESNEY
United States District Judge